UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE J. BOND,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No.  2:13-cv-127-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI) under Title XVI of the Social Security Act.  The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court denies plaintiff's motion and grants the Commissioner's motion.

I.     BACKGROUND

Plaintiff filed an application for SSI alleging that she had been disabled since October 15, 2001.  Administrative Record ("AR") 275.  Plaintiff's application was initially denied on March 13, 2008, and upon reconsideration on July 16, 2008.  *Id.* at 189-193, 196-200.  On August 24, 2009, a hearing was held before administrative law judge ("ALJ") Mark Ramsey.  Plaintiff appeared at that hearing and testified without the assistance of an attorney representative.  On February 19, 2010, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.  *Id*. at 171-177.  Plaintiff sought review from the Appeals Council and

on May 11, 2011, the Appeals Council remanded the matter to the ALJ to, among other things, give further consideration to the nontreating source opinion, further evaluate claimant's subjective complaints and if warranted by an expanded record, obtain evidence from a Vocational Expert ("VE"). *Id.* at 186-188.

On October 12, 2011, a second hearing was held before ALJ Ramsey. *Id.* at 59-122. Plaintiff was represented by counsel at the hearing, at which she and a VE testified. *Id.*

On November 18, 2011, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 16-27. The ALJ made the following specific findings:

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

1. The claimant has not engaged in substantial gainful activity since August 29, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: seizure disorder, migraines, gastritis, status post right shoulder/clavicle fracture, status post-left wrist fracture, status post thoracic and lumbar spine fractures, degenerative disc disease of the thoracic and lumbar spine, degenerative joint disease of the bilateral knees, chronic obstructive pulmonary disorder (COPD), major depressive disorder, generalized anxiety disorder with posttraumatic features, panic disorder and an intermittent explosive disorder (20 CFR 416.920(c)).
   * * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

   * * *

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant must avoid concentrated exposure to dust, fumes, cannot work[ ] with dangerous machinery and/or heights, cannot perform detailed and/or complex work, can perform simple tasks, cannot work as a team, cannot perform any fast-paced assembly work, can work in the presence of other employees but not where the claimant is dependent on others['] work and others are dependent on her.

   * * *

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 26, 1967 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.968).

8. Transferability of jobs skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

*Id.* at 18-26.

/////

1   Plaintiff requested that the Appeals Council review the ALJ's decision, and on November
2   18, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of
3   the Commissioner. *Id.* at 3-7.[2]

## II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.  ANALYSIS

Plaintiff claims that the ALJ erred in his treatment of the medical source opinions and in not presenting certain limitations in the hypothetical posed to the VE.

### A.  The ALJ Properly Weighed the Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

---

[2] The Appeals Council did, however, expand the record with additional evidence. *Id.* at 7.

1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

            1.    <u>Susan Mathias, PA</u>

First, plaintiff argues that the ALJ erred in rejecting the opinion of physician's assistant, Susan Mathias.  Ms. Mathias submitted a Medical Source Statement form regarding plaintiff's seizure disorder.  She opined that plaintiff's seizures would cause disruptions in the workplace and impose certain limitations on plaintiff's ability to work.  AR 773-777.  In addition, in a Medical Source Statement form regarding plaintiff's headaches, she opined that plaintiff's headaches would cause absences from work and prevent plaintiff from performing even basic work functions.  *Id.* at 767-772.  The ALJ deemed Ms. Mathias's opinions "unpersuasive" because (1) "as a physician's assistant, she is not an acceptable medical source pursuant to SSR 06-3p," and (2) her opinion relies "in part on an assessment of an impairment for which the claimant received no treatment from her," specifically, the seizure disorder.  *Id* at 23.

/////

Plaintiff argues that the ALJ erred in rejecting Ms. Mathias's opinion as not from an "acceptable medical source," citing 20 C.F.R. § 416.913(a)(6) and *Taylor v. Commissioner*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)).  ECF No. 16 at 8-9.  As the Commissioner points out in her cross-motion, § 416.913(a)(6) was repealed in 2000.  65 Fed. Reg. 34950-01.  Thus, plaintiff's discussion of how this obsolete regulation supports her claim of error carries no weight.

The applicable regulations provide that a physician's assistant, although a treating medical source, is viewed as an "other source" and not as an "acceptable medical source."  SSR 06-3p, 2006 SSR LEXIS 5; 20 C.F.R. §§ 404.1513, 416.913.  Plaintiff cites to *Taylor* for the proposition that if the physician's assistant "work[s] closely with, and under the supervision" of a doctor, then the physician's assistant opinion "is to be considered that of an 'acceptable medical source.'" ECF No. 16 at 8-9.  The Commissioner suggests that *Taylor* cannot be relied upon for this proposition, because the case *Taylor* cites to, *Gomez*, was premised on a repealed regulation – § 416.913(a)(6).  ECF No. 19 at 7-8; *see also Johnson v. Colvin*, No. 1:12-cv0524-AWI-GSA, 2013 U.S. Dist. LEXIS 82820, at *29-31 (E.D. Cal. June 12, 2013) (noting the uncertain vitality of this proposition from *Taylor*).  The court need not resolve this dispute, as plaintiff has not even come close to showing that Ms. Mathias worked closely with and under the supervision of a treating doctor.  In advancing her argument, plaintiff cites to nothing more than a single medical record signed by Ms. Mathias, with "receipt acknowledge by Robert Winshall, MD."  ECF No. 16 at 9 (citing AR 762).  This is not enough to transform Ms. Mathias into an "acceptable medical source" and to equate her opinion to that of a treating physician.  *See Crenshaw v. Colvin*, No. 2:12-cv-97-AC, 2013 U.S. Dist. LEXIS 134397, at *21 (E.D. Cal. Sept. 18, 2013) (medical sources were not considered to be "acceptable medical sources" where record did not establish they were agents of the plaintiff's treating psychiatrist or that a close supervisory or agency relationship existed).  Simply put, Ms. Mathias, a physician's assistant, is viewed under the regulations as an "other source."  SSR 06-3p, 2006 SSR LEXIS 5; 20 C.F.R. §§ 404.1513, 416.913.

/////

In rejecting testimony from an "other source," the ALJ need only give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may consider the mere fact that an opinion is not from an "acceptable medical source" in giving it little weight. *See* SSR 06-3p, 2006 SSR LEXIS 5; 20 C.F.R. § 404.1527(c). Here, the ALJ rejected the findings of Ms. Mathias because she was not an acceptable medical source and because she did not treat plaintiff for her seizure disorder. *See* AR 688-89, 690-91, 694, 759-60, 761-762 (medical records from plaintiff's visits with Mathias, occasionally noting plaintiff's seizure disorder, but primarily providing medication management for plaintiff's chief complaints of headaches, back and neck pain, and allergies). The court finds that the ALJ gave legally sufficient reasons, supported by substantial evidence of record, for rejecting the opinions of Ms. Mathias.

### 2. Joe M. Azevedo, Ph.D.

Next, plaintiff argues it was improper for the ALJ to rely on some portions of consulting psychologist Dr. Azevedo's opinion, while ignoring other portions.

Dr. Azevedo opined that plaintiff could understand, remember and carry out one and two-step instructions of moderate complexity, could maintain concentration, persistence and pace, and could make judgments on simple work-related decisions. The ALJ found this portion of the opinion to be "persuasive" and afforded it "considerable weight," noting that it was "consistent with the record as a whole." AR 23.

Dr. Azevedo also opined that plaintiff could not consistently manage work pressure or respond to changes in routine work settings without disruption from her anxiety symptoms, and would have moderate to marked difficulty interacting appropriately with supervisors, coworkers and the general public. The ALJ found this portion of the opinion "unpersuasive" and afforded it "little weight" because it relied "predominantly on the claimant's symptomatic complaints." *Id.* The ALJ summarized plaintiff's complaints as follows:

> [T]he claimant alleges that she has difficulty sleeping, difficulty completing personal care tasks, requires reminders to take medication and perform personal grooming tasks, cannot perform yard work, requires encouragement to perform household chores and/or yard work; rarely goes outside, cannot travel unaccompanied, cannot drive, has difficulty lifting, squatting, bending, standing,

reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, seeing, remembering, completing tasks, concentrating, following instructions, and using her hands.  The claimant also alleges that she has difficulty sustaining attention, interacting appropriately with authority figures, managing stress and dealing with changes in routine.

*Id.* at 24.  The ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her alleged symptoms were] not credible . . . . "  *Id.* at 25.  The ALJ referred to the absence of medical records supporting plaintiff's claims of bowel and urinary incontinence, knee pain, and depressive symptoms.  *Id.* at 25.  The ALJ also pointed to evidence in the record "suggesting that the claimant ha[d] exaggerated [her] symptoms and limitations."  *Id.*[3]

The opinion of an examining physician, such as Dr. Azevedo, may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounts plaintiff's credibility.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Plaintiff does not dispute the fact that the rejected portions of Dr. Azevedo's opinion were based on her subjective complaints.  Nor does plaintiff contend that the ALJ failed to properly discount her credibility.  Therefore, the ALJ was permitted to reject the portions of Dr. Azevedo's opinion that were based upon plaintiff's subjective complaints and the court finds no error.

        3.   Omar Mora Colon, M.D.

Next, plaintiff argues that the ALJ erred in failing to provide clear and convincing reasons for rejecting the findings of Dr. Colon, a state agency consulting physician.  The ALJ rejected Dr. Colon's opinion regarding plaintiff's workplace limitations because it was "inconsistent with his own examination findings, which were benign."  AR 23.

An ALJ may disregard a medical opinion when it is internally inconsistent.  *See* 20 C.F.R. § 416.927(c)(4).  Further, an inconsistency in a doctor's opinions, observations, and clinical notes "is a clear and convincing reason for not relying on the doctor's opinion" regarding the claimant's

---

[3] Plaintiff challenges this adverse credibility finding for the first time in her reply brief. *See* ECF No. 20.  Because plaintiff did not raise this argument in her opening brief, she has waived it.  *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

abilities or limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

Here, the ALJ's rejection of Dr. Colon's opinion is supported by substantial evidence and was permissibly based on the discrepancies within Dr. Colon's report. As the ALJ noted, portions of Dr. Colon's opinion regarding plaintiff's workplace limitations appear to be internally inconsistent. For example, Dr. Colon opined that plaintiff could lift and carry less than ten pounds both "occasionally" and "frequently." *Id.* at 682. Dr. Colon attributed this limitation to plaintiff's history of seizures and dizziness, yet also noted that plaintiff's seizures were controlled with medication.[4] AR 680, 682. Pointing to plaintiff's "controlled" seizures in part, Dr. Colon opined that plaintiff could never climb or balance, yet found that she could walk without any limitations and could frequently stoop, kneel, crouch and crawl. *Id.* at 682. The limitations imposed by Dr. Colon were not necessarily consistent with his own benign examination findings, including the finding that plaintiff's walking and coordination were "normal," that she could sit and stand without any limitations, and that she had no manipulative limitations. *Id.* at 681-82.

B.  The ALJ Did Not Present the VE with an Incomplete Hypothetical

Plaintiff's final argument is that the ALJ posed an incomplete hypothetical to the VE because the ALJ failed to ask the VE about plaintiff's limitation to simple one- and two-step tasks. Plaintiff also argues that the ALJ erred in accepting the testimony of the VE, because the VE found that plaintiff could perform certain jobs requiring level 2 reasoning, which is not consistent with a limitation to one- or two-step tasks. Plaintiff's arguments are based on the flawed premise that the medical expert limited plaintiff to "simple one and two step instructions." *See* ECF No. 16 at 13 (citing AR 105-109, 598).[5] Although the ALJ stated that the medical

---

[4] According to plaintiff, "the record makes clear that even with medication, [plaintiff] continued to have seizures." ECF No. 16 at 13 (citing AR 943). The medical record to which plaintiff refers notes that plaintiff claimed to have experienced a seizure within the prior three weeks. AR 943. That medical record, dated October 5, 2011, postdates Dr. Colon's assessment by nearly two years, and does not undermine the statement contained in Dr. Colon's notes.

[5] Plaintiff's citation to AR 598 appears to be a typographical error. AR 568, however, contains Dr. Azevedo's finding that plaintiff "has the general cognitive abilities to understand, remember, and carry out one- and two-step instructions of moderate levels of complexity."

9

1  expert testified that plaintiff could carry out "simple one and two-step work," the medical expert's
2  actual testimony was that plaintiff "would not have difficulty" with "simple one to three step[ ]"
3  work. *Id.* at 23, 109.

4  Hypothetical questions posed to a vocational expert must set out all the substantial,
5  supported limitations and restrictions of the particular claimant. *Magallanes v. Bowen*, 881 F.2d
6  747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the
7  expert's testimony as to jobs in the national economy has no evidentiary value. *DeLorme v.*
8  *Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of
9  hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that
10 ultimately serves as the basis for the ALJ's determination must be supported by substantial
11 evidence in the record as a whole. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

12 The ALJ assigned considerable weight to the opinion of the medical expert, who testified
13 that plaintiff could not work in a team environment but could work around others, and that she
14 could not perform highly detailed and/or complex work activities but could understand,
15 remember, and carry out simple *one to three* step work. AR 23, 105-109. The ALJ incorporated
16 the medical expert's opinion into his residual functional capacity ("RFC") assessment of plaintiff,
17 concluding that plaintiff "cannot perform detailed and/or complex work, can perform simple
18 tasks, cannot work as a team, cannot perform any fast-paced assembly work, [and] can work in
19 the presence of other employees but not where the claimant is dependent on others['] work and
20 others are dependent on her."[6] *Id.* at 22. During the hearing, the ALJ asked the VE to consider a
21 hypothetical individual who, among the other limitations set forth in the RFC, "cannot do detailed
22 or complex work," but "can do simple unskilled work – simple work." *Id.* at 111. In response,
23 the VE identified four jobs that plaintiff could perform. *Id.* at 111-112.

24 The ALJ's conclusion that plaintiff is capable of performing simple tasks is consistent
25 with the medical expert's conclusion that plaintiff is capable of completing three-part tasks. *See*

---

[6] Although the ALJ described plaintiff's limitation regarding instructions differently than the medical expert when summarizing the medical expert's testimony, the difference does not render the ALJ's assessment inaccurate. *See Morris v. Astrue*, No. Cv 11-10311-OP, 2012 U.S. Dist. LEXIS 107796, at *7 (C.D. Cal. July 31, 2012).

10

1  *Morris*, 2012 U.S. Dist. LEXIS 107796, at *6.  Thus, the ALJ's hypothetical is supported by
2  substantial evidence and accurately reflects plaintiff's limitations as assessed by the ALJ.  In
3  addition, the ALJ properly accepted the VE's testimony regarding the jobs plaintiff could
4  perform, even if one or more of those jobs requires level 2 reasoning.  *See Coleman v. Astrue*, No.
5  Cv 10-5641 JC, 2011 U.S. Dist. LEXIS 19892, at 812 (C.D. Cal. Feb. 28, 2011) ("the weight of
6  prevailing authority precludes a finding of any inconsistency between a reasoning level of two
7  and a mere limitation to simple, repetitive tasks or unskilled work"); *Watkins v. Astrue*, No. ED
8  CV 11-0343 JCG, 2012 U.S. Dist. LEXIS 5199, at *14 (C.D. Cal. Jan. 17, 2012) ("reasoning
9  level two is compatible with an RFC restricted to simple, routine work").  For these reasons, the
10 court finds no error.  *See Bayliss*, 427 F.3d at 1217 (because the "hypothetical that the ALJ posed
11 to the VE contained all of the limitations that the ALJ found credible and supported by substantial
12 evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the
13 hypothetical therefore was proper"); *cf. Aragon v. Colvin*, 2013 U.S. Dist. LEXIS 92319, at *8
14 (C.D. Cal. July 1, 2013) ("there is an inconsistency with Reasoning Level Two when the ALJ's
15 RFC includes an additional restriction to one- and two-step instructions").

16     Plaintiff also contends that the VE's opinion as to the jobs that plaintiff can perform is
17 contradicted by Dr. Colon's medical opinion.  ECF No. 16 at 14.  This argument is based on
18 plaintiff's contention that the ALJ erred in assessing Dr. Colon's opinion.  As explained above,
19 the ALJ did not err in assessing this evidence, and plaintiff's piggy-back argument necessarily
20 fails.

21     IV.    CONCLUSION
22     The ALJ applied the proper legal standards and supported his decision with substantial
23 evidence. Therefore, it is hereby ORDERED that:
24     1. Plaintiff's motion for summary judgment is denied;
25     2. The Commissioner's cross-motion for summary judgment is granted; and
26 /////
27 /////
28 /////

11

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 20, 2014.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE